IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOLVAY USA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-849 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CUTTING EDGE FABRICATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant Cutting Edge Fabrication's motion to dismiss [26] pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. Specifically, it is denied with respect to Counts II and III. It is granted with respect to the remaining counts. Count V is dismissed with prejudice. Counts I, IV, and VI are dismissed without prejudice. Plaintiff may file an amended complaint, if it can do so consistent with the analysis in this opinion and Rule 11, by March 22, 2021.

**STATEMENT**

**I. Background[1]**

In May of 2018, Plaintiff Solvay USA, Inc. ("Plaintiff") provided Defendant Cutting Edge Fabrication, Inc. ("Defendant") with specifications for Defendant to bid on a contract for two atmospheric tanks for Plaintiff's use at its plant in University Park, Illinois. [1] at ¶ 5. On June 18, 2018, Defendant submitted a final proposal to Plaintiff for the tanks, and Plaintiff issued a purchase

---

1 For purposes of ruling on Defendant's motion to dismiss, the Court accepted as true all well-pleaded factual allegations set forth in Plaintiff's complaint and drew all reasonable inferences in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)).

1

order for the atmospheric tanks on June 20, 2018. [1] at ¶¶ 6-7. Plaintiff's purchase order was subject to its own terms and conditions and identified the "critical" nature of Defendant's services to Plaintiff's operations at its University Park plant. [1] at ¶ 7. Defendant began fabrication of the atmospheric tanks upon receipt of Plaintiff's payment, and Plaintiff received the finished tanks in November of 2018. [1] at ¶¶ 8-9. After the tanks were delivered, Plaintiff determined they were materially defective upon discovering several deficiencies, including leaks, cracks, and welding defects; Plaintiff alleges that the tanks "failed to meet relevant repad requirements and API 650 standards." [1] at ¶ 10. Plaintiff notified Defendant of the defects in the tanks upon discovery, and Defendant tried and failed to repair the tanks on multiple occasions. [1] at ¶ 11. As a result of the unrepaired deficiencies in the atmospheric tanks, Plaintiff alleges that it has suffered ongoing losses of more than $900,000. [1] at ¶ 12. Plaintiff now brings six claims against Defendant, including a breach of contract (Count I), breach of express warranty (Count II), indemnification (Count III), breach of implied warranty of merchantability (Count IV), breach of implied warranty of fitness for the ordinary purpose (Count V), and breach of implied warranty of fitness for the particular purpose (Count VI). Defendant seeks dismissal of all six of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [26].

**II.     Legal Standard**

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint, not the merits of the allegations. See, *e.g.*, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor." See, *e.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A plaintiff can survive a Rule

12(b)(6) motion by alleging facts which, when accepted as true, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc*, 496 F.3d 773, 776 (7th Cir. 2007)). While the Court accepts as true a plaintiff's factual allegations for the purpose of a motion to dismiss, legal conclusions and threadbare recitals of the elements of a cause of action are not afforded the same presumption of truth. See, *e.g.*, *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873 (7th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

#### A. Preliminary Matters

The Court is facing a bare-bones complaint with motion to dismiss briefing that is somewhat clipped. As a result, a variety of issues are underdeveloped, one of which is worth addressing before turning to the 12(b)(6) analysis. That issue is what law applies to the case. Plaintiff appears to be bringing state-law claims, but Defendant points out that Plaintiff does not identify what state's laws (or, theoretically, what federal laws) Plaintiff wants to proceed under. The answer is not necessarily obvious, because Plaintiff is a Delaware corporation, Defendant is a North Carolina corporation, at least some key events alleged in the complaint (apparently) occurred in Illinois, and the contract at issue is not attached to the complaint or briefing.

Plaintiff says it does not have to identify what state or federal law it is suing under, [30 at 3], citing *Shah v. Inter-Cont'l Hotel Chicago Operating*, 314 F.3d 278 (7th Cir. 2002), for the proposition that it is "not necessary for plaintiffs to plead the applicable law" and *Greenbaum v. Islamic Republic of Iran*, 451 F.Supp.2d 90, 95 (D.D.C. 2006), for the proposition that "[w]hile plaintiffs neglected in their complaint to reference California law, which governs the claims of the

decedent's parents, choice of law is not required in the initial complaint. Rather, it is a matter of argument and briefing." [30 at 3.]

First, *Shah* says a complaint cannot *necessarily* dismissed because it does not identify what statute, state or federal, or common law principle the conduct alleged in the complaint might violate. *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). But it does not give plaintiffs *carte blanche* to plead state law claims without identifying which state's law applies, and that is the problem Defendant raises. *Shah* also notes that the district court could have asked the plaintiff to file a memorandum fleshing out the legal basis of the claims he asserted and reprimands plaintiff's attorney for not identifying a relevant statute that he could have discovered "with a little research." *Id*. at 283. So, *Shah* may be more of a warning to Plaintiff than an aid.

*Greenbaum* also is of limited value, as an out-of-circuit district court case in which plaintiffs sought money damages from a foreign nation under the terrorism exception to the Foreign Sovereign Immunities Act. In addition to those dissimilarities, the issue that Plaintiff here points to was whether, after the court in *Greenbaum* entered a default against the defendant but before it entered judgment, the plaintiffs needed to amend the complaint to clarify that some plaintiffs were proceeding under California law, when the original complaint invoked only New Jersey law. *Greenbaum*, 451 F. Supp. 2d at 95. The *Greenbaum* court said "no," but the differences in procedural posture, underlying causes of action, applicable law, defendants, and forums give that answer little persuasive force in this case.

Though the briefing does little to clarify this issue, both parties proceed as if Illinois law applies, which seems correct. In diversity cases, the law of the forum state applies to the substantive issues. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019)

4

(citing *Fednav Intern. Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 838-39 (7th Cir. 2010)); see also *RLI Ins. Co. v. Conseco, Inc.,* 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits."). So, the Court proceeds under this framework, at least at this early stage of the case.

  **B.**  **Count I: Breach of Contract**

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (citations omitted). The complaint alleges facts sufficient to support each element of its breach of contract claim except the second: Plaintiff's performance of its own contractual obligations. [1]. Plaintiff sufficiently alleged that the parties entered into a binding and enforceable contract. Throughout May and June of 2018, Plaintiff and Defendant engaged in a back-and-forth discussion regarding Plaintiff's desire to purchase two atmospheric tanks. [1] at ¶¶ 5-8. Defendant submitted a bid for their fabrication based on Plaintiff's specifications, and Plaintiff accepted before submitting a final purchase order, which Defendant accepted. [1] at ¶¶ 6-8. Thus, the complaint has sufficient factual support to infer that a contract existed. Plaintiff also adequately alleged a breach, by stating that the tanks arrived defective with "weld deficiencies, leaks, and cracks" and remain defective to this day. [1] at ¶¶ 10, 11. Plaintiff also states that is has suffered over $900,000 in damages as a result of the defective tanks. *Id.* at ¶ 12.

However, regarding the second element, the complaint merely alleges: "Plaintiff has compiled with all of its requirements under the Contract." [1] at ¶ 15. Plaintiff does not allege any facts that identify what its obligations under the contract were or how it complied with such

5

obligations. In response to Defendant's argument, Plaintiff points to ¶ 12 of the complaint, but that paragraph says nothing about Plaintiff's obligations under the contract or whether it met them. The allegation in ¶ 15 is a legal conclusion unsupported by any factual allegations, and legal conclusions are insufficient to establish a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Hoopla Sports & Entm't, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 357 (N.D. Ill. 1996) (dismissing a breach of contract claim where plaintiff failed to state what its contractual obligations were or how it fulfilled them). As a result, the Court grants Defendant's motion to dismiss with respect to Count I. Rule 8 may not require much, but it requires more than has been alleged thus far. However, because Plaintiff may be able to remedy this issue by alleging additional facts that suggest Plaintiff did fulfill its contractual obligations, the Court grants Plaintiff leave to amend its complaint.

        **C.**      **Count II: Breach of Express Warranty**

Count II is a claim for breach of express warranty. [1] at ¶¶ 18-21. "To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was the basis of the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 739 (N.D. Ill. 2015) (quoting *Indus. Hard Chrome. Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999)). A claim for breach of express warranty requires that the plaintiff be in privity of contract with the defendant. *Id.*

The complaint alleges that Plaintiff provided specifications for Defendant to bid on a contract to provide Plaintiff with two atmospheric tanks in May of 2018. [1] at ¶ 5. Defendant subsequently provided Plaintiff with a proposal for the tanks that met Plaintiff's specifications. [1]

6

at ¶ 6. Plaintiff issued a purchase order subject to its own terms and conditions based on Defendant's proposal. [1] at ¶ 7. Defendant accepted the order and began fabrication. [1] at ¶ 8. Plaintiff alleges that several deficiencies were discovered after the tanks were delivered in November of 2018, including weld deficiencies, leaks, and cracks. [1] at ¶¶ 9, 10. Plaintiff claims that the atmospheric tanks it received "failed to meet relevant repad requirements and API 650 standards" (without explaining what those terms mean). [1] at ¶ 10.

Defendant argues that Plaintiff fails to allege that an affirmation of fact or promise formed the basis of the bargain. [27 at 3.] The Court disagrees. Plaintiff plausibly alleges that the Defendant made an affirmation of fact or promise when it submitted a bid and accepted Plaintiff's order based on Plaintiff's terms and conditions. [1] at ¶¶ 5-8. In support of its breach of express warranty claim, Plaintiff alleges that "[t]he Contract contained an express warranty by Defendant that provided, among other things that the materials Defendant provided would * * * conform to all of Plaintiff's specifications, including performance specifications required by Plaintiff or stated by Defendant; and * * * would be free from defective materials and workmanship." [1] at ¶ 19. Plaintiff also alleges that the contract provided that the atmospheric tanks would be free from fault and defect and would conform to the specifications and standards Plaintiff provided. [1] at ¶ 19. Thus, the complaint adequately alleges that Defendant made an affirmation or promise about the tanks that formed the basis of the bargain with Plaintiff.

Additionally, Defendant argues that Plaintiff cannot state a claim for both breach of contract (Count I) and breach of express warranty (Count II), as they rely on the same underlying facts. [27] at 3. Defendant is incorrect. Although Count I (breach of contract) and Count II (breach of express warranty) rely on the same facts, at the pleading stage, Plaintiff is not required to choose one avenue for recovery over the other. See*, e.g., Indus. Hard Chrome*, 64 F. Supp. 2d at 747

7

(citing Fed. R. Civ. Procedure 8(e); *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 364 (7th Cir. 1990)); *Fink v. DeClassis*, 745 F. Supp. 509, 515 (N.D. Ill. 1990) (denying motion to strike breach of express warranty claim as duplicative of breach of contract claim). Although a plaintiff may not obtain a double recovery, he may certainly plead multiple, even contradictory, paths to a single recovery. *Indus. Hard Chrome*, 64 F. Supp. 2d at 747 (citing *Tribune CO v. Geraghty & Miller, Inc.*, 1997 WL 438536, at *3 (N.D. Ill. July 25, 1997)). Accordingly, the Court denies Defendant's motion to dismiss with respect to Plaintiff's claim for breach of express warranty.

### D. Count III: Indemnification

Count III is for indemnification. Defendant argues that indemnification is an obligation that arises only when two parties are responsible to a third party, citing the Illinois Joint Tortfeasor Contribution Act and the Illinois Construction Contract Indemnification for Negligence Act. [27 at 4.] Defendant seems to argue that neither of these statutes provides for indemnification that covers attorneys' fees, which is part of what Plaintiff seeks in Count III, and the indemnification claim "is not a viable cause of its fact" and must be dismissed. *Id.*

Defendant's argument is difficult to follow but easy to resolve. In Illinois, contracts may include indemnity clauses (as Plaintiff alleges that its contract with Defendant does), and they are not necessarily limited to claims against third parties. *City of Chicago v. Motive Power Systems*, 2019 WL 2994504 (N.D.Ill. July 9, 2019). Defendant makes no argument suggesting that Plaintiff does not have a claim for contractual indemnity, or cannot bring a separate claim for contractual indemnity, or even acknowledging contractual indemnity, so Defendant's motion is denied with respect to Count III.

### E. Count IV: Breach of Implied Warranty of Merchantability

In contracts for the sale of goods, "a warranty that the goods shall be merchantable is implied . . . if the seller is a merchant with respect to goods of that kind." 810 ILL. COMP. STAT. 5/2-314. To be merchantable, the goods must "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." *Id.* "To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that '(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect.'" *Corwin v. Connecticut Valley Farms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (quoting *Indus. Hard Chrome, Ltd.*, 64 F. Supp. 2d at 748). A plaintiff's allegation that the goods were not merchantable at the time of sale should be supported by an allegation of what the ordinary purpose of the good is. *Indus. Hard Chrome*, 64 F. Supp. 2d at 748. "While the Federal Rules of Civil Procedure allow for liberal notice pleading, conclusory allegations regarding the [good's] merchantability and fitness are not sufficient to state a claim for breach of implied warranty of merchantability absent some factual support." *Id.* (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) (holding that "bare legal conclusions" are insufficient to survive a 12(b)(6) motion where a plaintiff failed to include factual allegations in support of the elements of a claim)).

Plaintiff's complaint fails to adequately state a claim for relief on Count IV, because it meets only two of the three required elements for a claim for breach of implied warranty of merchantability: damages and notice. Plaintiff alleges that it informed Defendant of the tanks' deficiencies upon their discovery, and Plaintiff suffers ongoing damages of more than $900,000 as a result of the faulty tanks. [1] at ¶¶ 11, 12. But Plaintiff does not allege facts sufficient to establish the first element of the cause of action: that the atmospheric tanks were not merchantable at the time of sale. Instead, Plaintiff states only, "There was an implied warranty by Defendant

9

that the materials it was to provide would be merchantable. Defendant has breached the warranty as the tanks it provided were not merchantable." [1] at ¶¶ 27-28. To support this allegation, Plaintiff highlights some deficiencies in the tanks that were discovered after their delivery. [1] at ¶ 10. However, Plaintiff failed to sufficiently allege that the tanks were not merchantable *at the time of sale*, referencing the long process from the tanks' manufacture to their delivery by a third party. [27] at 5. Plaintiff's complaint fails to identify what the point of sale actually was—that is, when the tanks were actually considered "sold"—to establish they were not merchantable at that time.

Contrary to Plaintiff's assertion, the complaint does not state when the sale took place in ¶¶ 5 through 8. Rather, ¶¶ 5 and 9 give a five-month range that begins with Plaintiff giving Defendant a purchase order and ends with Plaintiff receiving the tanks. The complaint does not state at what point in that five-month period, at what point between placing an order and receiving delivery, Plaintiff asserts that the goods were not merchantable. As a result, the complaint fails to state that the goods were not merchantable at the time of sale and therefore does not state a claim under the implied warranty of merchantability.

Additionally, the complaint does not identify the ordinary purpose of the atmospheric tanks, a required element of the claim Plaintiff attempts to state. *Indus. Hard Chrome*, 64 F. Supp. 2d at 748. Plaintiff's complaint merely alleges that Plaintiff informed Defendant of its intent to use the tanks in "critical" services at its plant in University Park, Illinois. [1] at ¶¶ 5, 7. Accordingly, the Court grants Defendant's motion to dismiss Count IV of Plaintiff's complaint. Again, because it may be possible for Plaintiff to include more factual allegations to meet the pleading standard for a claim for breach of implied warranty of merchantability, the Court grants Plaintiff leave to amend Count IV.

F.     **Count V: Breach of Implied Warranty of Fitness for the Ordinary Purpose**

Plaintiff also claims that Defendant breached its implied warranty of fitness for the *ordinary* purpose. Plaintiff states, "There was an implied warranty by Defendant that the materials it was to provide would be fit for their ordinary purpose." [1] at ¶ 31. Defendant argues that this cause of action does not exist and that the count is duplicative of Count IV, breach of the implied warranty of merchantability. [27] at 4.

To support its argument that such a warranty does exist, Plaintiff cites *AFA v. Phoenix Closures*, 501 F.Supp. 224, 229 (N.D. Ill. 1980). [30 at 7.] Plaintiff purports to quote *AFA* as saying that an implied warranty of fitness for ordinary purpose exists "[w]here sellers of liquor bottle cap liners were persons who, in professional sense, sold a particular kind of goods giving rise to a warranty, where purpose for which manufacturer used liners and liner materials was in fact their ordinary purpose, and where sellers admitted that their product caused leakage and staining and that manufacturer's customers rejected their product."

There are multiple glaring problems with Plaintiff's citation. First, the quoted text does not appear at the pincite, or anywhere in the body of the opinion; it comes from the Westlaw headnote. Second, Plaintiff omits key language from the end of the headnote: "[the] *implied warranty of merchantability* was breached by sellers" (emphasis added). And third, the pin cite points to a section of the opinion titled "Implied Warranty of Merchantability." Moreover, Plaintiff's brief is entirely wrong on the substance as well. *AFA* clearly discusses "ordinary purpose" in the context of the implied warranty of merchantability, *not* as a separate implied warranty. To be sure, *AFA* does discuss implied warranties of fitness for a *particular* purpose, but that is alleged in Count VI (discussed below), not Count V.

11

Plaintiff is similarly wrong on its citation to *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 698 (2004). This case too clearly discusses the implied warranty of merchantability, not some separate warranty of fitness for ordinary purpose: "A product breaches the *implied warranty of merchantability* if it is not 'fit for the ordinary purposes for which such goods are used.'" *Id.*, (emphasis added) (quoting *Alvarez v. American Isuzu Motors,* 321 Ill. App. 3d 696, 703 (2001)). Plaintiff's brief does not quote or paraphrase *Pearson*, so the omission of language that directly contradicts Plaintiff's position is less obvious. Nevertheless, as far as the Court can tell, there is no such thing as a claim for a breach of an implied warranty for fitness for an *ordinary* purpose—and the cases cited by Plaintiff certainly do not establish (or even suggest) that there is. Plaintiff's citations demonstrate that Count V is duplicative of Count IV, the claim under the implied warranty of merchantability, so the Court dismisses Count V with prejudice.

### G.     Count VI: Breach of Implied Warranty of Fitness for a Particular Purpose

"To state a claim for breach of implied warranty of fitness for a particular purpose, plaintiffs must allege that (1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *Corwin*, 74 F. Supp. 3d at 891 (quoting *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007)).

Plaintiff fails to adequately state a claim for relief based on breach of implied warranty of fitness for a particular purpose. In its complaint, Plaintiff simply alleges, "There was an implied warranty by Defendant that the materials it was to provide would be fit for the particular purpose contemplated by Plaintiff. Defendant has breached this warranty, as the tanks it provided were not fit [sic] for the purpose contemplated by Plaintiff." [1] at ¶¶ 35-36. Plaintiff does not describe any

12

purpose for the atmospheric tanks it purchased from Defendant. Nor does Plaintiff allege that it told Defendant of its particular purpose for which it required the atmospheric tanks. Plaintiff only alleges that the purchase order identified Defendant's services as "'critical' to Plaintiff's personnel and processes." [1] at ¶ 6. Plaintiff does not explain how the furnishing of the atmospheric tanks was critical or for which personnel or processes it was to be used. Defendant claims that it did not know of any particular purpose for the atmospheric tanks or how the deficiencies affected the particular use. [2] at 5. Plaintiff responds that it provided Defendant with the specifications for the construction of the tanks, apparently asking the Court to consider specifications for the tanks equivalent to the purpose of the tanks. Maybe the specifications make the purpose obvious to Plaintiff, but the purpose is certainly not obvious from the sparse complaint, nor are the specifications described, so they provide no information from which the Court might be able to infer purpose. Based on the little Plaintiff has pleaded so far, specifications are not purpose, and knowing the specifications does not necessarily mean knowing the purpose. Plaintiff has failed to allege facts sufficient to survive Defendant's motion to dismiss Count VI.

Defendant also argues that claims for breach of implied warranty of merchantability (Count IV) and breach of implied warranty of fitness for a particular purpose (Count VI) are mutually exclusive and cannot coexist. [27] at 4, 6. Defendant offers no citation supporting this assertion. On the contrary, courts have allowed claims for both to coexist where the facts support the creation of both warranties. See, *e.g.*, *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (affirming district court's certification of class claims for breaches of the implied warranties of both fitness for a particular purpose and merchantability); *Great Am. Ins. Co. v. Honeywell Int'l*, 2007 WL 2905898, at *18 (W.D. Pa. Sept. 28, 2007); *Hawkinson v. A.H. Robins Co.*, 595 F. Supp. 1290, 1314 (D. Colo. 1984) ("An implied warranty of merchantability and implied warranty of

13

fitness for a particular purpose may coexist when there is sufficient evidence to support the creation of each warranty."). An official comment to the Illinois-adopted Uniform Commercial Code that recognizes the implied warranty of fitness for a particular purpose states that a contract "may of course include both" warranties, 810 ILL. COMP. STAT. 5/2-315. The commentary to 5/2-315 (implied warranty of fitness for a particular purpose) explains that the ordinary purpose and particular purpose envisage two different uses, one the typical use and one use that is peculiar to the buyer. 810 ILL. COMP. STAT. 5/2-315. Because the statute provides that both warranties can be created in the same contract and courts have held the same, this Court has no reason to conclude that Count IV and VI cannot coexist in a complaint. However, as discussed above, the complaint does not provide sufficient factual allegations to support a claim for breach of implied warranty of fitness for a particular purpose, so the motion to dismiss Count VI is granted. The court allows Plaintiff leave to amend Count VI to include additional facts required to state a claim for breach of implied warranty of fitness for particular purpose.

### IV. Conclusion

For the foregoing reasons, Defendant Cutting Edge Fabrication's motion to dismiss [26] pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part. Specifically, it is denied with respect to Counts II and III. It is granted with respect to the remaining counts. Count V is dismissed with prejudice. Counts I, IV, and VI are dismissed without prejudice. Plaintiff may file an amended complaint, if it can do so consistent with the analysis in this opinion and Rule 11, by March 22, 2021.

Dated: February 22, 2021

                                                          Robert M. Dow, Jr.
                                                          United States District Judge